# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# PINE BLUFF DIVISION

KEVIN INGRAM                                                                    PLAINTIFF

v.                                   No. 5:06CV00208 JLH

PINE BLUFF NATIONAL BANK                                   DEFENDANT

## **OPINION**

This is an employment discrimination case. Kevin Ingram, an African-American male, brought claims against his former employer, Pine Bluff National Bank, alleging race discrimination under Title VII of the Civil Rights Act (42 U.S.C. § 2000e *et seq.*) and 42 U.S.C. § 1981. The defendant has moved for summary judgment. For the reasons stated below, this motion is granted.

A court should grant summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). The party moving for summary judgment bears the initial responsibility of informing the district court of the basis of its motion and identifying the portions of the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Group Health Plan, Inc. v. Philip Morris USA, Inc.*, 344 F.3d 753, 763 (8th Cir. 2003). When the moving party has carried its burden under Rule 56(c), the non-moving party must "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1985) (quoting FED. R. CIV. P. 56(c)). The non-moving party

sustains this burden by showing that "there are genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250. When a non-moving party cannot make an adequate showing on a necessary element of the case on which that party bears the burden of proof, the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 323. In deciding a motion for summary judgment, the Court must view the facts and inferences in the light most favorable to the party opposing summary judgment. *Boerner v. Brown & Williamson Tobacco Corp.*, 260 F.3d 837, 841 (8th Cir. 2001). If the evidence would allow a reasonable jury to return a verdict for the non-moving party, summary judgment should be denied. *Derickson v. Fidelity Life Assoc.*, 77 F.3d 263, 264 (8th Cir. 1996).

The Eighth Circuit has said that summary judgment should seldom be granted in discrimination cases where inferences are often the basis of the claim. *Duncan v. Delta Consolidated Indus., Inc.*, 371 F.3d 1020, 1024 (8th Cir. 2004); *Bassett v. City of Minneapolis*, 211 F.3d 1097, 1099 (8th Cir. 2000). But see *Bainbridge v. Loffredo Gardens, Inc.*, 378 F.3d 756, 762 (8th Cir. 2004) (Arnold, J. dissenting).

## I.

Kevin Ingram applied for employment with Pine Bluff National Bank (the "Bank") in December 2003. He began working for the Bank as a "runner" the following month and continued in this position until his termination in July 2005. A runner is an employee who goes to the Bank's various branches, picks up work for those branches and brings it back to the main branch, prepares the mail, and takes the mail to the post office.

Ingram was trained to do this job by Brad Coburn, another runner, who is white. Coburn then

left his position at the Bank to attend college, but returned to work during the summer and school breaks. The record does not reflect Coburn's work hours. Ingram worked year-round. His hours were 10:00 a.m. to 5:00 p.m. Monday through Wednesday and 8:00 a.m. to 5:00 p.m. Thursday and Friday.

Ingram's starting rate of pay was $6.00 an hour, and his ending rate of pay was $6.25 an hour. He did not receive any benefits. According to his W-2 Wage and Tax Statements, Ingram earned $ 7967.57 in 2004 and $3951.06 in 2005. The record does not reflect the total number of hours he worked for the Bank during either year.

According to Coburn's W-2 Wage and Tax Statements, he earned $4617.04 in 2004 and $4452.53 in 2005. The record does not reflect Coburn's rate of pay, whether he received any benefits, or the total number of hours he worked for the Bank.

In addition to Coburn and Ingram, the Bank employed four other runners, all of whom are African-American. One of these runners, Christine White, supervised Ingram on the job. The record does not reflect the rates of pay or work hours of these four runners.

Ingram testified in his deposition that he was "shuffled around" and his work hours were reduced when Coburn came back to work during the summer and school breaks. Specifically, he stated that he would be instructed to come in at 12:00 instead of 10:00. When asked how his job duties changed when Coburn returned to work at the Bank, Ingram testified that he and Coburn would split the duties up between the two of them. Ingram also testified in his affidavit:

> When Brad Coburn came home from school, he was given preferential assignments and duties. He was allowed to have as his work area the book keeping office and the mail room, while I was confined largely to the store room, a place where supplies and equipment were maintained. When Brad Coburn left, I was still not allowed to be around the bookkeeping department because [Carol Ann Rogers, who is in charge of

3

bookkeeping,] did not want me there. Ms. White told me that on more than one occasion. When I told [Larry Davis, the Bank's Vice President,] about it, he did not indicate any concern and made it appear that I should be happy because I had a job.

Ingram testified that during his employment with the Bank he sought to advance to the position of teller or bookkeeper, which are entry-level positions but are better paid than runners. Ingram stated that he spoke to Joyce Reed, Operations Manager, about a teller position on November 16, 2004. Reed advised him that no teller positions were available at that time but that she would let him know if anything became available. In March 2005, Ingram let Reed know that he was still interested in a teller position, but she again told him that no positions were available. Ingram also testified that he spoke to Rogers about a bookkeeping position in March 2005. Rogers told him that no bookkeeping positions were available.

The Bank's employee handbook states that "[r]esumes are accepted in Human Resources and retained for a period of 30 days," but that "[a]pplications are taken only if there is an opening and the applicant <u>must apply for a specific job</u>." (emphasis in original). The handbook further provides: "<u>*Job postings are at the discretion of Management*</u>." (emphasis in original). Ingram did not apply for a teller or bookkeeper position through the Bank's human resources department.

The Bank asserts that Ingram had performance problems on the job, but Ingram denies that his performance was deficient. The defendant and Ingram dispute the number of occasions on which Davis spoke to Ingram about Ingram's job performance, but Ingram admits that Davis "discussed with him that he had work that was late coming in" and that Davis talked to him "about the mail not getting to the Post Office." Ingram also testified in his deposition that he may have had other conversations with Davis that he could not recall. Davis indicated in his deposition that he wrote memoranda on these issues and placed them in Ingram's personnel file, but the record does not

4

contain these memoranda. Ingram has produced a copy of a performance evaluation, however, in which he received an overall rating of "competent."

At about 8:00 a.m. on the morning of July 6, 2005, Davis told Ingram that he had received a report that Ingram had not taken the mail on July 5 as requested. Ingram told Davis that he did not think it was his responsibility to take the mail because White had told him that Coburn would do it. Davis advised Ingram that the mail was Ingram's responsibility and told him to go back to work. Ingram told Davis that "he did not think it was fair."

In a sworn statement, White asserted:

> On July the 6th Larry [Davis] told me that he was going to talk to Kevin [Ingram] again about the mail. When Kevin came over to the store room he told me that he was not going to take the mail. I told him that if he didn't he may get fired. He said "well they will have to just fire me[.]"

Davis testified in his deposition that White informed him of Ingram's alleged conduct and that he then discussed the matter with John Garrison, the President of the Bank. Later that day, Davis terminated Ingram's employment. Davis testified that he fired Ingram "[f]or lack of doing his responsibilities. Not doing what he was responsible to do."

Ingram testified in his affidavit that he did not take the mail on July 5 because White had told him that it was Coburn's responsibility to do so. Ingram also denied refusing to perform any duties assigned to him by White or Davis.

## II.

Under Title VII, an employer cannot discharge or otherwise "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race . . . ." 42 U.S.C. § 2000e-2(a)(1). This provision prohibits disparate

5

treatment of employees based on race, *see Tatum v. City of Berkeley*, 408 F.3d 543, 553 (8th Cir. 2005), failure to promote an employee due to his or her race, *see Rose-Maston v. NME Hosps., Inc.*, 133 F.3d 1104, 1109-10 (8th Cir. 1998), and discharge based on an employee's race, *see id.* at 1108-09. Forty-two U.S.C. § 1981 provides that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts . . . ." The standards to be applied in analyzing claims of race discrimination in employment under these two statutes, however, are the same. *Wilson v. Legal Assistance of N.D.*, 669 F.2d 562, 563-64 (8th Cir. 1982).

Because there is no direct evidence of discrimination, Ingram's claims are analyzed under the burden-shifting framework set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973). Under this framework, the plaintiff must first establish a prima facie case of race discrimination. *See Rose-Maston*, 133 F.3d at 1107. If the plaintiff does so, a rebuttable presumption of discrimination arises. *Id.* The burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for taking the adverse employment action. *Id.* If the employer offers such a reason, the plaintiff must then present evidence sufficient to create a fact issue as to whether the employer's articulated reason is pretextual and to create a reasonable inference that race was a motivating factor. *McCullough v. Real Foods, Inc.*, 140 F.3d 1123, 1127 (8th Cir. 1998).

### III.

Ingram asserts that the Bank discriminated against him because of his race in three ways. First, Ingram alleges that the Bank subjected him to disparate treatment with regard to the terms and conditions of his employment. Second, he claims that the Bank failed to promote him to a teller or

6

bookkeeper position. Finally, he asserts that he was wrongfully discharged.

**A.    Disparate Treatment**

Ordinarily, a plaintiff must show the following elements to establish a prima facie case of discrimination based on disparate treatment: (1) he belonged to a protected class, (2) he was qualified to perform his job, (3) he suffered an adverse employment action, and (4) he was treated differently than similarly-situated members of the unprotected class. *See Shoffstall v. Henderson*, 223 F.3d 818, 825 (8th Cir. 2000) (citing *Breeding v. Arthur J. Gallagher & Co.*, 164 F.3d 1151, 1156 (8th Cir. 1999)). This case, however, involved no similarly-situated members of an unprotected class. All of the other runners were African-American except Coburn, and Coburn is not similarly situated to Ingram because Coburn worked at the Bank only during the summer and school breaks. *See Ledbetter v. Alltel Corporate Servs., Inc.*, 437 F.3d 417, 723 (8th Cir. 2006) ("the test is rigorous for determining whether an employee is similarly-situated," as "employees must be similarly-situated in all relevant respects for proper comparison"). The Supreme Court has recognized, however, that facts vary in Title VII cases and the prima facie proof required of a plaintiff may differ according to the situation. *McDonnell Douglas*, 411 U.S. at 802 n.13. Accordingly, the Court will consider whether Ingram has shown that the alleged disparate treatment occurred under circumstances giving rise to an inference of discrimination. *See Sallis v. Univ. of Minn.*, 408 F.3d 470, 476 (8th Cir. 2005) (to establish prima face case of disparate treatment, the plaintiff must establish: (1) membership in a protected class; (2) that he was qualified for his position and performed his duties adequately; and (3) that he suffered an adverse employment action under circumstances permitting an inference of unlawful discrimination); *Griffin v. City of Omaha*, 785 F.2d 620, 625 (8th Cir. 1986) ("Proof of disparate treatment under Title VII follows a well-established pattern. The plaintiff initially must

establish a prima facie case by proving facts sufficient to give rise to an inference of discrimination.").

The first element is not in dispute. Ingram, an African-American, is a member of a protected class. Although the Bank contends that Ingram had performance problems, Ingram has met the second element necessary to establish a prima facie case by producing evidence that he was qualified for his job as a runner. Ingram has produced a performance evaluation showing that he was rated as "competent," and he testified that he never refused to perform any duties assigned to him by White or Davis.

The issue of whether Ingram has shown that he was subjected to an adverse employment action is a closer call, but Ingram has produced evidence sufficient to meet the minimum threshold necessary to establish a prima facie case. *See Davenport v. Riverview Gardens Sch. Dist.*, 30 F.3d 940, 944 (8th Cir. 1994) (threshold of proof necessary to make a prima facie case of employment discrimination is minimal). "An adverse employment action is a tangible change in working conditions that produces a material employment disadvantage." *Spears v. Mo. Dep't of Corr. & Human Res.*, 210 F.3d 850, 853 (8th Cir. 2000). Termination, reduction in pay or benefits, and changes in employment that significantly affect an employee's career meet this standard, but minor changes or inconveniences do not. *Id.* Ingram's complaints that he was "shuffled around" when Coburn came back to work and required to work in the store room reflect minor changes or inconveniences on the job, not material employment disadvantages. Ingram also testified, however, that his work hours were reduced when Coburn came back to work, resulting in a loss of pay. Because a "reduction in pay" is an adverse employment action, Ingram has established the third element.

Ingram's prima facie case of disparate treatment fails on the final element, however, because he has produced no evidence giving rise to an inference of race discrimination. Even taking as true Ingram's statements that his hours were cut when Coburn returned to work and that Ingram was required to work in the store room while Coburn worked in other areas of the bank, this evidence is not proof of a racial motivation for the Bank's treatment of Ingram. As noted above, the Bank employed several other runners who were African-American. The record contains no evidence that their work hours were cut when Coburn returned to work and, with the exception of White, no evidence as to their work stations. Norma Ingram, who is Kevin Ingram's mother and also an employee of the Bank, testified by affidavit: "White does not have an office. She has a desk in a storage room. Caucasian persons in supervisory designations have offices, computers, and supplies necessary to perform their tasks." Assuming the truth of this testimony, White's work station does not establish that she is treated less favorably due to her race because no evidence has been presented that she was similarly situated to other employees in supervisory positions.

The essence of Ingram's argument is that he was treated unfairly in comparison with Coburn. The law does not prohibit all disparate treatment of employees; it prohibits disparate treatment based on protected characteristics such as race. The wisdom or fairness of an employer's practices are not subject to review by a federal court unless improper discrimination is involved. *See Duffy v. Wolle*, 123 F.3d 1026, 1038 (8th Cir. 1997). The mere fact that Coburn is white does not establish that the Bank reduced Ingram's hours or assigned him to work in the store room because Ingram is African-American.

**B.     Failure to Promote**

To establish a prima facie case in a failure-to-promote case, the plaintiff must show that (1)

he was a member of a protected group; (2) he was qualified and applied for a promotion to an available position; (3) he was rejected; and (4) a similarly qualified employee, not part of a protected group, was promoted instead. *Rose-Maston*, 133 F.3d at 1109.

The Bank argues that Ingram has no failure-to-promote claim because teller and bookkeeper positions are "entry-level" positions. Thus, the Bank contends, moving into such a position would not be a promotion. This argument is without merit. The Bank's Hire Log shows that it hired five tellers between November 2004 and June 2005, the time period that Ingram claims he sought a teller position. All of these tellers were paid in the range of $8.50 to $11.00 per hour, which is more than Ingram's rate of pay. Greg Garner, the Bank's Human Resources Director, admitted in his deposition that a teller position would have been a promotion for Ingram "[i]f he had applied for the position."

Even so, Ingram has failed to establish the elements of a prima facie case on this claim. Regarding the second element, Ingram has shown neither that he was qualified nor that he applied for a bookkeeper or teller position. First, Ingram has not offered any evidence as to the required qualifications for the positions, much less shown that he met those qualifications. *See Rose-Maston*, 133 F.3d at 1110 (plaintiff failed to establish prima facie case where she offered no evidence of the qualifications necessary for the position she sought). Second, Ingram admits that he did not submit an application for either position in the Human Resources department. Ingram argues that the teller positions[1] were not posted, that Davis received promotions to various supervisory positions in the

---

[1] Ingram has produced no evidence that any bookkeeper positions were available or that any employees were hired as bookkeepers during the time period that he was employed at the Bank. Norma Ingram testified that a white person was hired as a bookkeeper several weeks after Ingram's termination.

Bank without applying in the Human Resources department, and that Ingram "did apply for promotions in the manner available and known to him." These arguments are irrelevant. Garner testified that entry-level positions, such as teller and bookkeeper, are not posted and that applicants for these positions must submit a resume to Human Resources. This practice is consistent with the Bank's policies stated in the employee handbook, and Ingram has produced no evidence that the Bank did not follow these practices in hiring tellers and bookkeepers. Ingram was not at liberty to establish his own procedures for applying for entry-level positions at the Bank and demand that the Bank follow them. *Cf. Ross v. Kansas City Power & Light Co.*, 293 F.3d 1041, 1047 (8th Cir. 2002) (employers have wide discretion to establish requirements and qualifications for particular positions, so long as these requirements do not discriminate based upon impermissible characteristics such as race); *Duffy*, 123 F.3d at 1037-38 (same).

Regarding the fourth element, Ingram has not established that the white tellers who were hired were "similarly qualified" to himself. Of the five tellers who were hired during the relevant time period, three were white and two were black. All of these tellers had previous experience as tellers, except one of the white tellers. That individual had five years' previous experience handling money, counting down registers, and balancing registers in a grocery store.[2] The record does not

---

[2] The Bank has produced its Hire Log as evidence showing the date of hire, race, rate of pay, and previous experience of each teller hired between November 2004 and July 2005. The Bank also produced the resume of the white teller who had previously worked in a grocery store. Ingram denies that the bank hired five tellers, three of whom were white and two of whom were black, during this time period. He also denies that all except one had previous experience as tellers and that the remaining one had experience handling money. Ingram has produced no evidence to rebut the Bank's evidence on these points, however, and mere allegations or denials are insufficient to defeat a motion for summary judgment. *See* FED. R. CIV. P. 56(e); *Krenik v. County of Le Sueur*, 47 F.3d 953, 960 (8th Cir. 1995).

reflect the tellers' levels of education. Ingram had a high school diploma[3] and previous experience as a cook and as a retail salesperson at a sporting goods store. The record does not reflect whether Ingram was responsible for counting down registers or balancing registers in these positions. This evidence does not establish that Ingram and the white tellers were similarly qualified.

**C.      Discriminatory Discharge**

The Court may bypass analysis of the prima facie case where the facts permit easy disposition under a later stage of the *McDonnell Douglas* test. *Hannoon v. Fawn Eng'g Corp.*, 324 F.3d 1041, 1046 (8th Cir. 2003). Assuming that Ingram has established a prima facie case of discriminatory discharge, the Bank has met its burden of production by alleging insubordination as a legitimate, nondiscriminatory reason for Ingram's termination. Under the *McDonnell Douglas* analysis, the burden thus shifts to Ingram to show that the Bank's reason is merely pretextual and to create a reasonable inference that race was a motivating factor. Ingram has not met this burden.

Ingram denies that he refused to perform his job responsibilities. For purposes of this motion for summary judgment, the Court must assume that Ingram's testimony is true. Even assuming that Ingram did not refuse to perform his job, however, it does not follow that the Bank discharged him because of his race.

The proper inquiry is not whether the Bank was factually correct in determining that Ingram was insubordinate, but whether the Bank actually believed that he had acted in this manner. *Johnson v. AT&T Corp.*, 422 F.3d 756, 762 (8th Cir. 2005) (holding that proper inquiry in wrongful discharge case was not whether the plaintiff had actually made bomb threats, but whether the defendant

---

[3] Ingram testified in his deposition that he completed one year of college, beginning in the fall of 2005. The parties agree that Ingram had only a high school education during the time that he was employed by the Bank.

honestly believed that he had); *see also Krenik v. County of Le Sueur*, 47 F.3d 953, 960 (8th Cir. 1995) (a federal court does not reexamine an employer's business decisions, but limits its inquiry to whether the employer gave an honest explanation of its behavior). The Bank has produced evidence that Davis told Ingram that it was Ingram's responsibility to take the mail and that White then reported to Davis that Ingram had refused to do so. Davis testified that he discharged Ingram for this reason. Although Ingram denies that he refused to take the mail, he has presented no evidence that White did not make this report to Davis or that Davis did not believe her.

Finally, "the showing of pretext necessary to survive summary judgment requires more than merely discrediting an employer's asserted reasoning for terminating an employee[,]" as the employee must "show that the circumstances permit a reasonable inference to be drawn that the real reason . . . was because of his race." *Johnson*, 422 F.3d at 763. White, who supervised Ingram and alleged that he was insubordinate, was African-American. All of the other runners with the exception of Coburn were also African-American, and Ingram has produced no evidence that they were discharged. Of course, Davis, who made the decision to terminate Ingram, is white. Davis's unrebutted testimony, however, is that the majority of employees who work under his supervision are black and that he does not recall ever placing a written reprimand in the personnel files of any of them as he had with Ingram. Given these facts, the Court cannot reasonably infer that race was the real reason for Ingram's termination.

## CONCLUSION

There is no genuine issue of material fact. The defendant has established a prima facie case of entitlement to summary judgment. Ingram has failed to meet proof with proof. The defendant's motion for summary judgment is granted. Document # 7.

IT IS SO ORDERED this 20th day of April, 2007.

_____
J. LEON HOLMES
UNITED STATES DISTRICT JUDGE